IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Agape Senior Primary Care, Inc., | C/A No. 3:16-cv-01610-JFA |
| Plaintiff, | |
| vs. | **ORDER** |
| Evanston Insurance Company, | |
| Defendant. | |

**I.     INTRODUCTION**

This matter is before the Court on Defendant Evanston Insurance Company's ("Defendant") motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 4). This matter has been fully briefed, and, after reviewing the briefs and considering the oral arguments on this motion, Defendant's motion to dismiss is granted in part and denied in part.

**II.    FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Agape Senior Primary Care ("Plaintiff") filed this action on April 14, 2016, in the Richland County Court of Common Pleas, Case No.: 2016-CP-40-02436, against Defendant. (ECF No. 1-1). According to the complaint, Plaintiff purchased a Physicians, Surgeons, Dentists, and Podiatrists Professional Liability Insurance Policy (the "Policy") for the policy period of August 1, 2011, to August 1, 2012, from Defendant. (*Id.*). Plaintiff has alleged bad faith, or, in the alternative, breach of contract for Defendant's (A) failure to provide coverage or a defense in the "Watts Litigation"[1]; and (B) mishandling of prior claims, namely (1) reassignment of prior claims

---

[1] This litigation was commenced by Vickie Watts as Personal Representative of the Estate of Dorothy E. Jones against Plaintiff and will be hereinafter referred to as the "Watts Litigation." (*See* ECF No. 4-5).

1

to new counsel midway through the claim process and (2) failure to properly participate in mediation, adjustment, and settlement of prior claims.[2] (*Id.*).

In accordance with the requirements of 28 U.S.C. § 1332, this matter was removed by Defendant on the basis of diversity jurisdiction to the United States District Court, District of South Carolina, Columbia Division pursuant to 28 U.S.C. §§ 1441 and 1446 on May 19, 2016. (ECF No. 1). On May 19, 2016, Defendant moved to dismiss the action for failure to state a claim upon which relief can be granted. (ECF No. 4). On June 14, 2016, Plaintiff filed a response.[3] (ECF No. 7). On June 21, 2016, Defendant replied. (ECF No. 10). On August 11, 2016, a motion hearing was held and this matter was taken under advisement. (ECF No. 19).

## III.   LEGAL STANDARD

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court must determine whether the factual allegations in a complaint state a plausible claim for relief based on "judicial experience and common sense." *Id.* at 679. In addition, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

---

[2] Plaintiff conceded at oral argument that it would not pursue its claim that Defendant breached its duty of good faith and fair dealing by "[c]omitting such other actions that have resulted in undue delay . . . as it may prove at trial." (ECF No. 1-1, ¶ 59(d)).

[3] On June 14, 2016, Plaintiff filed a motion for extension of time to respond until later that day, (ECF No. 6), and a text order was issued granting said motion thus extending Plaintiff's deadline to respond until June 14, 2016, (ECF No. 9). Therefore, the response was timely filed.

## IV.  DISCUSSION

### A.  Watts Litigation

Defendant argues that Watts' complaint does not allege "anything outside the issues addressed in this Court's Amended Order and the Fourth Circuit's Order" as it "stems solely from allegations regarding Addo's acts and the negligent hiring and retention of Addo by [Plaintiff], which are not covered under the Policy."[4] (ECF No. 4-1, p. 10).  However, Plaintiff argues that these allegations involve the acts or omissions of others—nurses and a different physician other than Addo—so it does not stem solely from those of Addo or the negligent administrative acts of Plaintiff and, therefore, is covered by the Policy. (ECF No. 7, p. 4).

First, the Court will look to the underlying complaint, Watts' complaint, to determine if insurance coverage may exist. *Collins Holding Corp. v. Wausau Underwriters Ins. Co.*, 666 S.E.2d 897 (S.C. 2008).

Based upon the factual allegations regarding the specific actions and omissions of the nurses and a physician, other than Addo, and failure of these agents to properly supervise and investigate medical care for Ms. Jones, the Watts' complaint appears to state a claim beyond Addo's or Plaintiff's acts or omissions as viewed in the light most favorable to Plaintiff. (*See* ECF No. 4-5, ¶¶ 15–21, 34).  Therefore, it is plausible that the Policy provides coverage for at least some of the claims in the Watts' complaint and Defendant unreasonably refused to defend Plaintiff.

---

[4]  Addo is an unlicensed physician who was previously employed by Plaintiff under a fraudulent identity and listed as an insured under the Policy until his arrest.  In a prior declaratory judgment action regarding coverage, this Court's amended order, later affirmed by the Fourth Circuit, held that the Policy provided coverage to Plaintiff "for the acts and omissions of all Coverage A Named Insureds and Coverage B Named Insureds, to the extent such individuals were acting within the scope of their duties on behalf of [Plaintiff]," (ECF No. 4-2, p. 21), but did not provide coverage for any of Plaintiff's or Addo's own negligent acts or omissions. (*Id.* at p. 21).

Second, after determining coverage may have been applicable based upon the Watts' complaint, the Court looks to Plaintiff's complaint to determine if sufficient facts are alleged to show Defendant's withdrawal was in bad faith or breach of contract.

Plaintiff alleges that, in March 2012, it used an "integration of services" model where one patient was never assigned to just one professional. (ECF No. 1-1, ¶ 17). Plaintiff alleges that this model was used to supervise the care provided by its professionals to ensure that "any concerns regarding a course of patient care taken by one professional are caught and corrected by the other physicians and nurses." (*Id.* at ¶ 18). In addition, Plaintiff alleges Defendant had actual knowledge of this method being used prior to the Watts Litigation. (*Id.*). Defendant maintains that it did not owe a duty under the contract because all of Watts's claims stem from the negligent hiring or retention of Addo so it properly denied coverage. (ECF No. 4, p. 13). Furthermore, Defendant argues its "disclaimer of any duty to defend . . . was properly based upon the terms of the Policy and the Orders, and, as such, no action for bad faith exists." (*Id.* at p. 14).

The elements for breach of contract are (1) the existence of a contract, (2) a breach of the contract, and (3) damages caused by the breach. *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962). The Policy serves as the contract in this case. Plaintiff has alleged this contract was breached when Defendant withdrew its defense in the Watts Litigation and denied coverage, (ECF No. 1-1, ¶¶ 35-37), in effect breaching its duty to investigate and defend claims, (*Id.* at ¶ 65). Lastly, as a result of the breach, Plaintiff has alleged that it has been denied the benefits owed under the Policy and incurred damages. (*Id.* at ¶ 37).

As an alternative to the breach of contract claim, Plaintiff alleges that Defendant breached its duty of good faith and fair dealing owed to Plaintiff under the Policy. Under South Carolina law, "the elements of a bad faith refusal to pay action are: (1) the existence of a contract of

insurance between the parties; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action; and (4) causing damage to the insured." *Snyder v. State Farm Mut. Auto. Ins. Co.*, 586 F. Supp. 2d 453, 457 (D.S.C. 2008) (citing *Howard v. State Farm Mut. Auto. Ins. Co.*, 450 S.E.2d 582, 586 (S.C. 1994)).

Plaintiff alleges that Defendant has acted in bad faith regarding the Watts Litigation by "[f]ailing to provide [Plaintiff] coverage or a defense for the lawsuit" despite its timely demand for a defense in the Watts Litigation, Defendant's actual knowledge of the "integration of services" method used by Plaintiff, and this Court's amended order in the previous declaratory judgment action, which caused damage to Plaintiff by denying it benefits under the Policy. (*Id.* at ¶¶ 17–37, 59(a)).

Defendant states Plaintiff's breach of contract and bad faith claims are premature until Plaintiff's obligation has been fully and finally determined. (ECF No. 4-1, p. 15). However, Plaintiff correctly points to *St. Louis Dressed Beef & Provision Co. v. Maryland Cas. Co.*, 201 U.S. 173, 177–78 (1906), wherein the United States Supreme Court evaluated similar policy language and held the denial of all liability by the insurer and its refusal to defend suits constituted a breach of contract. Furthermore, the South Carolina Supreme Court has recognized a bad faith cause of action by an insured for the insurer's bad faith handling or processing of third party claims. *Tadlock Painting Co. v. Maryland Cas. Co.*, 473 S.E.2d 52, 55 (S.C. 1996). In addition, breach of an express contractual provision is not required as a prerequisite to the claim. *Id.* at 55.

Therefore, based on the factual allegations viewed in the light most favorable to Plaintiff, this Court holds Plaintiff has sufficiently stated a plausible claim for breach of contract or bad faith regarding the Watts Litigation sufficient to survive Defendant's motion to dismiss.

**B.     Prior Claims**

Plaintiff's allegations of bad faith or breach of contract as to the prior claims are two part: (1) improper reassignment of prior claims to new counsel in the middle of the claim process; and (2) failure to properly participate in mediation, adjustment, and settlement of prior claims.

### 1. Improper Reassignment of Prior Claims

Defendant argues that it did not act in bad faith during the prior claims by reassigning pending claims from Turner Padget ("Turner") to different counsel because it had the right to select defense counsel under the Policy. In addition, Defendant argues that Plaintiff has failed to plead the necessary elements for a bad faith claim—specifically, that Defendant acted unreasonably or caused damage to Plaintiff by fully eroding the policy. Plaintiff does not argue against Defendant's right to select counsel, but does argue that Defendant unjustifiably chose to select new counsel in the middle of the prior claims, which required new counsel to spend unnecessary time reviewing the claims and eroded benefits—available monies—under the Policy.

While evaluating a first party's bad faith claim, the South Carolina Supreme Court has stated "whether the company had the right to renew the policy was not in issue; rather, the issue was whether the non-renewal showed bad faith." *Nichols v. State Farm Mut. Auto. Ins. Co.*, 306 S.E.2d 616, 620 (S.C. 1983). Therefore, although Defendant has a right to select defense counsel under the Policy, it may not exercise this right in bad faith.

In this case, Plaintiff alleges that the Policy is an "eroding policy" which means "payment of defense costs, including attorney fees, reduces the benefits available under the Policy." (ECF No. 1-1, ¶ 38). Plaintiff alleges Defendant initially retained Turner to defend Plaintiff in the prior claims and Defendant paid a substantial amount of fees to Turner for this defense, (*Id.* at ¶ 42), but unreasonably terminated Turner in the middle of the prior claims. (*Id.* at ¶ 43). More specifically,

6

Plaintiff alleges that Turner was "properly performing its responsibilities as counsel," (*Id.* at ¶ 45); the new counsel "required significant time and expense to retrace the steps of Turner" resulting in "unnecessary and unjustifiable wasting" of the Policy's funds, (*Id.* at ¶ 47); and new counsel was located significantly farther away from Plaintiff than Turner, (*Id.* at ¶ 48).

These factual allegations, taken as true and viewed in the light most favorable to Plaintiff, are sufficient to state a claim for bad faith against Defendant in reassigning the third party prior claims; however, these allegations fall short to state a claim for breach of contract because Plaintiff acknowledges Defendant did provide a defense and investigation for the prior claims, including after reassignment, in its complaint. (*Id.* at ¶¶ 40, 42, 46–47). Therefore, the Court grants Defendant's motion to dismiss the breach of contract cause of action, but denies Defendant's motion to dismiss the bad faith cause of action with regard to reassignment of the prior claims.

### 2. Failure to Properly Participate in Mediation, Adjustment, or Settlement

During the prior claims, the parties engaged in mediation. Plaintiff claims that Defendant failed to act in good faith during mediation and settlement negotiations, as well as adjustment of prior claims. (*Id.* at ¶¶ 50–57, 59(c)). Specifically, Plaintiff claims that Defendant failed to send a proper representative as required under the South Carolina Alternative Dispute Resolution (SCADR) rules, which caused delay and increased expenses. (*Id.* at ¶¶ 51, 56–57).

Defendant argues Plaintiff's allegations of bad faith in failing to send a representative with authority to settle the claim to mediation are unsupported by law or fact and violate SCADR Rule 8 regarding confidentiality of a settlement conference. (ECF No. 4-1, p. 19).

Plaintiff responds that it has alleged it was injured by failed mediations and years of wasted time and increased expenses, which eroded benefits from the Policy. (ECF No. 7, p. 11). In addition, Plaintiff states that it did not disclose any communications from the mediation, only the

7

presence of coverage counsel and the lack of attendance by a representative with authority to settle the claim. (*Id.* at pp. 10–11). Plaintiff states it is raising this issue to show bad faith regarding Defendant's actions, not to support that the cases should have settled. (*Id.* at p. 11).

SCADR Rule 6(b)(4) does require the physical presence of, "[f]or any insured party against whom a claim is made, a representative of the insurance carrier who is not the carrier's outside counsel and who has full authority to settle the claim." By alleging that this necessary person was not physically present, it may be possible to show that Defendant acted in bad faith in processing the claims involved. In addition, SCADR Rule 8 states, "*Communications* during a mediation settlement conference shall be confidential." (emphasis added). Therefore, disclosure of those present or not present at the mediation is not necessarily prohibited. Furthermore, proof of intentional delay is relevant to a bad faith claim. *See Ocean Winds Council of Co-Owners, Inc. v. Auto-Owners Ins. Co.*, 241 F. Supp. 2d 572, 577 (D.S.C. 2002) (quoting an expert's testimony that "the biggest evidence of lack of good faith in this case is just the delay in getting this case resolved").

Therefore, Plaintiff was not prohibited from stating that a representative with authority to settle the claim was not present at the mediation in order to allege there was bad faith during the participation in mediation, adjustment, or settlement of the prior claims. Plaintiff has alleged that Defendant has failed to comply with the mandatory attendance requirement in many of the mediations for prior claims. (ECF No. 1-1, ¶ 51). In so doing, Plaintiff alleged that Defendant violated its implied duty of good faith and fair dealing to properly adjust and settle the prior claims. (*Id.* at ¶¶ 51–54). In addition, Plaintiff alleged this conduct resulted in "several failed mediations" in one specific prior claim, the "Hanna Class Action," and caused damage by eroding benefits from the Policy (*Id.* at ¶¶ 55–57).

8

Viewing these factual allegations in the light most favorable to Plaintiff and accepting them as true, Plaintiff has stated a claim for relief that is plausible on its face for bad faith regarding Defendant's participation in mediation, adjustment, and settlement of the prior claims.  However, Plaintiff has failed to state a claim for breach of contract because it only alleged contractual duties of defense and investigation and neither were breached as alleged for the mediation, adjustment, or settlement of the prior claims. (*Id.* at ¶ 65). Therefore, Defendant's motion to dismiss is denied in part and granted in part regarding the mediation, adjustment, and settlement of prior claims.

## V.    CONCLUSION

In sum, Plaintiff's allegations, accepted as true in a favorable light, constitute a plausible claim for relief with regard to its bad faith cause of action regarding the Watts Litigation and Defendant's mishandling of prior claims, as well as its breach of contract cause of action for Defendant's failure to defend in the Watts Litigation; however, Plaintiff has failed to state a claim upon which relief can be granted for its breach of contract cause of action regarding the mishandling of prior claims. Therefore, Defendant's motion to dismiss (ECF No. 4) is DENIED in part and GRANTED in part.

IT IS SO ORDERED.

September 14, 2016                                          Joseph F. Anderson, Jr.
Columbia, South Carolina                                    United States District Judge

9